21-5217 Mark Jordan, Appellant v. Federal Bureau of Prisons and Colette Peters, Director, U.S. Bureau of Prisons. Ms. Foley, amicus curiae for the appellant. Ms. Patterson for the appellate. Ms. Foley, good morning. Good morning, Your Honors, and may it please the court. I'm court-appointed amicus for appellant Mr. Mark Jordan, and I'd like to reserve four minutes for rebuttal, please. Sanctions C through M are contrary to law, and Mr. Jordan has standing to challenge them. Due to the minuteness of BOP's rules and its close oversight of Mr. Jordan, he is at substantial risk of incurring the sanctions of which he complains during the 23 remaining years of his incarceration, as his lengthy disciplinary history shows. He also suffers... Let me ask you about his remaining sentence, because according to the record anyway, there have been three and a half years almost that there have been no sanctions. I disagree with that, Your Honor. The record below only goes up to the time of his complaint in 2020, and in the five years prior to the filing of this complaint, he was found to have committed at least nine prohibited acts, and he incurred at least 18 separate sanctions for those acts. How about 20... Excuse me? How about 2020 forward? That's what I'm talking about. The administrative record below does not... is not lucid on that point. There's nothing in the record that says that, and so I think this court has to base its standing holding on what is in the record. Alternatively, I suppose the court could remand for further factual development with respect to Mr. Jordan's standing, but on the record before the court, I think it's very clear that Mr. Jordan is at imminent risk of incurring additional sanctions in light of his lengthy disciplinary history, and in light of the... I'm not... Okay, let me just say this. I'm not saying you were required to do this. Did you think about updating the sanctions record? So, I was not, Mr. ... I was not amicus or, you know, representing Mr. Jordan's below. I came in on appeal, and so I can't speak to whether or not that was considered. Well, you could have. Are you saying you couldn't have done it since you've been appointed? I suppose I might have. I don't think it was... I'm sorry. Go ahead. So, I think it's clear that on the basis of the record that is below... before the court and the record that was accrued up to the filing of Mr. Jordan's complaint, I think it's clear that he does have standing on the basis of imminent injury, and this is due not just to Mr. Jordan's close oversight of inmates like Mr. Jordan, and the minuteness of its rules of conduct, which prohibit quotidian conduct like insolence, swearing, OSHA violations, and untidiness. And on those bases, I think it's very clear that the court should find standing. The court could also find standing on the basis of ongoing injury. We'll go back to the future injury counsel. What, in your view, is the right way to think about the time horizon for that? If we're asking, is it sufficiently likely he'll be subject to one of these sanctions again? Are we talking a few years? I think at one point in your brief, you say we should look at the whole 24 years remaining in a sentence, and it seems like that can't be right. Well, I think in NBXREL-Peacock, this court spoke of the likelihood of injury within a fixed period of time. I think that period of time can be relatively long. In NBXREL-Peacock, I believe it was a year to 18 months. And in Lee v. Wiseman, the Supreme Court found prospective relief standing on the basis of likelihood of injury in the likelihood that a prayer would be said at a high school graduation four years in the future. So I think the important thing is that the time period be fixed. If the court were uncomfortable with looking at the 23 remaining years of Mr. Jordan's sentence, it could shorten that period to a shorter period, such as the four years at issue in Lee v. Wiseman, or even 18 months. I think it's still virtually certain that Mr. Jordan will incur additional sanctions within that fixed period of time. Okay. Judge Rogers, I think you're muted. Well, I'll just ask, I was going to ask, it seems to me your argument for standing is pretty straightforward in one respect. You're saying in the five years before the complaint, he was subject to this kind of discipline nine times, depending on how you count. And so it's likely he'll be subject to it again. But the government, as I don't know if you've acknowledged yet, we have all of these cases saying we generally expect litigants to follow the rules. And just wondering what your response to that line of cases is. Sure. Well, I think the assumption underlying the presumption of lawful conduct inheres, at least in part, in the permissibility of quotidian conduct. And also in the fact that ordinary citizens going through their lives are not under constant supervision by law enforcement officers. And neither of those assumptions is true here. As I mentioned, BOP's rules of conduct do prohibit quotidian conduct. And inmates like Mr. Jordan are under constant surveillance. And I just want to note that Mr. Jordan, rather than nine separate sanctions, he incurred 18 separate sanctions in the five years prior to the filing of his complaint. And of those, 15 were of the type of challenges here. Let me ask you about remoteness. He doesn't challenge the rules. And unlike Rahman or whatever it is from the 70s, it's not an informational injury. Isn't it even more remote if he's not challenging the rules that he's going to be sanctioned for rules that he does not challenge? I don't think so. First of all, I think that in Raymer versus Saxby, the court didn't simply rely on the informational injury, but rather on the inmate's subjection to the rules in general. And I think that's clear from the fact that the court found that the inmates had standing, not just to pursue their claim for the BOP's failure to publish the rules, but in addition for the notice and comment claim. And I think that perhaps with the typical inmate, who's disciplinary history weren't so lengthy and who didn't demonstrate such a proclivity to violate BOP's rules, that there might not be ongoing injury. But Mr. Jordan's disciplinary history shows that he is extremely likely to violate these rules. And so I don't think it's remote at all to think that BOP is going to impose these sanctions on him as it has done repeatedly in the past. All right. So you're basing that on the longevity. At least that's what I hear you saying. So how do we prevent every long-serving prisoner from following this precedent if we rule in your favor? I think that an inmate in order to have standing and in order to stand in the same shoes as Mr. Jordan would have to have a similarly lengthy disciplinary history. And I don't think that the court should be concerned at all about inmates offending in order to put themselves in the position of having standing. Because the sanctions they would be risking are pretty serious. I don't think that an inmate would risk months in solitary confinement or even loss of the few privileges that federal inmates do have in order to manufacture standing. I'm happy to, I'd like to move on to the merits if the court has no further questions about standing. I think that American BUS controls the outcome here. In American BUS, this court said that Congress could not have spoken more clearly than it did in Section 558B of the APA, and that express statutory authorization is required for sanctions. Now BOP attempts to cabin American BUS to statutes that expressly state that the particular sanctions are the only ones that an agency may meet out, but that reasoning is completely absent from the portion of the opinion addressed to Section 558B. Applying American BUS here, BOP is limited to the particular sanctions that Congress has provided for by statute. Those are the revocation of good conduct time, FSA time, FSA incentives, and for eligible inmates, statutory good time and parole. I think Congress could certainly have granted BOP broad sanctioning authority. It did so, for example, to the Attorney General in 18 U.S.C. Section 3600A, where it gave the Attorney General the power to promulgate regulations, quote, including appropriate disciplinary sanctions, but it didn't do so here, and BOP is therefore limited to the sanctions that Congress did provide. I also think that... Counselor, it seems to me that the sort of simple point on the other side of the statutory issue is that your position would mean that when the statute says BOP may provide for discipline, that means it gets to set out all sorts of rules for conduct, but can't establish any way of enforcing those rules. Is that, you know, mistaken as an implication of what your argument is? Well, I don't think here that BOP has its hands tied as to enforcing those rules. It simply means that Congress, it means to use the sanctions that Congress has specifically provided for. Right, so it does mean that this statute alone gives them no authority to enforce the rules that they're allowed to set out. I think that's the necessary implication of my position, yes. Okay. And BOP argues that the word discipline carries an offer a lot of weight, and that discipline gives it the authority to mete out sanctions, but I think the best way to think about the word discipline is that it refers to good order. Congress empowered BOP to, as your Honor mentioned, provide for inmate discipline by issuing rules of conduct governing inmates, but under American Bus, BOP still needed express statutory authorization for sanctions. Now, Congress provided that authorization with respect to specific sanctions, but it didn't speak generally in the way it has elsewhere. I think if the general command, a general command that doesn't mention the power to sanction at all, like discipline or enforce, is all that's necessary, then it's difficult to see what work Section 558B's as authorized by law clause is doing. And I think it's also difficult to draw a line between disciplining and enforcing or ensuring and protecting, such that it's hard to think of an agency that couldn't plausibly lay claim to the ability to craft and impose sanctions. Agencies are always instructed by Congress to do something, and under Section 558B, they can't just decide to use sanctions to do it. Congress has to have provided them with sanctioning power. I'd also point out that in common parlance, a word like enforce carries at least as much implication of the curfew than he understands that I'm going to punish him if he violates it. And Black's Law Dictionary indeed defines enforce to include to compel obedience to. And to me, that carries the implication of sanctioning power, at least as much as discipline does. But the court said in American Bus Association that Congress couldn't have spoken more clearly in requiring more. I see that I'm eating into my rebuttal time. I'm happy to answer more of the court's questions. I can't hear you. Is your sound on? No, but I think she's all set with no further questions. Oh, she's... Are you able to unmute her? Judge Rogers, you need to check your sound, Judge Rogers. Sorry, but the system is not working, Judge. Okay, we got you now. No questions then. Okay, we'll give you two points. Oh, wait. When did she stop arguing? Yeah, okay. You've got three minutes. Thank you. Ms. Patterson, good morning. May it please the court, Melissa Patterson for the Federal Bureau of Prisons. The appellant and the amicus both asked this court to adopt a really sweeping theory on which when Congress gave the BOP the authority to provide for discipline within federal prisons, it meant to only create rules, but not to enforce them. We urge the court to decline to adopt that really extraordinary reading of BOP's authorities on one of either two grounds. First, that Mr. Jordan has not carried his burden of establishing standing. We recognize that Mr. Jordan is a pro se litigant entitled to a liberal construction of his pleadings. We also recognize that past injury can bear on the question of the ability to suffer a future injury. But even with those two principles in mind, we don't think Mr. Jordan has said enough here to establish the type of injury that would justify the purely prospective relief that he has sought throughout this litigation. Second, assuming Mr. Jordan has standing, we think this court should simply reject his position on the merits. We think they hang their hat on this very narrow understanding of the word discipline that has no basis in the ordinary meaning of that word, either in 1930, when Congress first gave BOP this authority, or today. It has no bearing, no relationship to the way that the statute has always been implemented openly by BOP in ensuring discipline and order within its facilities, which is, of course, the Supreme Court has said the central object of prison administration. And it would have the really extraordinary consequence that it would mean that either in 1930 or today, BOP, any authority to sanction the thousands of prisoners in BOP facilities who are serving life sentences and therefore are not eligible for either the parole recommendation or the good time credits that appellant argues are the sole sanction that is available for BOP to punish prisoners who break prison rules. So on the merits, I'm not saying I do agree with that argument, but it seems as though your argument is essentially the statute is unambiguously clear in providing this authority. And if we do agree with that, is it your position that we wouldn't even need to address the constitutional avoidance non-delegation argument because the statute is ambiguous? Is that an argument that you're making? I think that's, yes, your honor. I think that discipline was unambiguously understood to mean the authority not only to create rules, but also to penalize those who break them within prison facilities. I think that that was clear in 1930. That's been clear throughout the 95-year history of the BOP. And I think it's, you know, certainly has far more than an intelligible principle obviating the need for this court to get into any of the delegation arguments. I want to note that the major questions, the invocation of major questions here is particularly extraordinary since it's amicus and appellant who are seeking, we're not seeking to expand any authority based on a newly discovered power. They're seeking to retract a long-held and very common sense implementation of prison administration authority contrary to the entire history of the statute. So I think that the short answer to your question is yes, that this is clear and we are operating within the authority Congress has provided us. Do you know whether the head of the Bureau of Prisons or through the attorney general submits the code that corrections uses in the Bureau of Prisons? It's not a formal submission, but it is a filing as it were with the Appropriations Committee. Do you know if that happens? I don't know exactly what happens in the appropriations process, Your Honor, but I do want to note that the code, the rules, and the sanctions imposed for specific types of rules are very clearly set out in a notice and comment regulation. The BOP, of course, had long provided for discipline for rules and penalties within its facilities, but in 1977, it undertook a rulemaking. It put out an NPRM. In 1982, it issued a final rule that sets out the various offenses, possession of a hazardous tool, everything from failing to follow orders to these more serious offenses like one of the ones Mr. Jordan created, such as murdering a prisoner in a BOP facility. So I think there's no question that BOP has been very transparent with the public, with Congress, with prisoners about the rules the inmates are expected to follow and the consequences that can follow if they break those rules. I had a few questions about standing. So you said that more should have been expected of him, and I just want to understand what exactly else you think he should have done. And I think just to tee that up, it seems to me that in an ordinary case, his complaint essentially says we've got nine instances of the challenged harm in the past five years, maybe more depending on how you count, but a lot in the past five years, and he's going to be subject to this same regime going forward, and so it's sufficiently likely that he'll be subject to it at least once more in, say, the ensuing few years. Why isn't that sort of the straightforward argument for standing here? I think because there are sort of two levels of uncertainty between the past injury and the future harm that Mr. Jordan is foreseeing here, and the first level is particularly problematic for him, and that is the assumption that he will engage in a type of conduct that could trigger the have presented here is that that preception simply shouldn't apply in prisons because of the control that EOP has over inmates. I want to note that the third and the seventh states have rejected that sort of approach. I want to note that the Supreme Court and Louis v. Casey, I think, you know, it hypothesized a prisoner who might think that the medical facilities of an inmate are constitutionally inadequate, and it made very clear you don't have standing to challenge the contours of the infirmary if you're healthy. You have to show that the constitutional infirmity in this institution is actually going to injure you. But isn't this like somebody who's been sick nine times in the past five years, and there's no reason to think he's going to get any healthier? Well, I think that last part is what's missing here. I think if an inmate said, I have been sick nine times in the past year, and I have a chronic condition that makes it likely and non-speculative that I'm going to be in the infirmary in the future. Notably absent any of Mr. Jordan's either filings in district court or even in his filings to this court, and he has filed three briefs here, is any sort of statement of, you know, he doesn't identify any rule that he intends to break. He doesn't even, and this goes to the ongoing injury, he doesn't even say my day-to-day conduct has changed as a result of this sanction. If we focus on the likelihood of future injury, it seems like you're saying if his complaint said something like, you know, I've gotten all of these sanctions in the past, and despite my best efforts, it's going to be reasonably likely that I'll be subject to at least one of them in the next few years. I mean, is that what you expect him to have said in the complaint? I think we would be closer. Now, of course, this court has said you can't just toss in a sort of undifferentiated, and I will be harmed in the future. So I think the court would rightly expect a few more specifics. I think our point here is that we don't have anything in any of the filings here to suggest that Mr. Jordan is unlawful. At least anyone who has previously incurred a sanction. And I do want to note the second level of uncertainty here is Mr. Jordan doesn't say all sanctions are unlawful. So the second level of uncertainty, just 90% of them, is that he would be not only in the future engaged in misconduct that would trigger the application of these sanctions, that the disciplinary hearing officer would choose one of the sanctions that he contends is unlawful. Maybe it seems like, and this might be right, that this argument really hinges on this assumption that has been applied in the context of validly enacted criminal laws that people won't, you know, again violate a criminal law. Because without that, it seems as though this looks a lot like a case like Peacock, right? You're going to have an ongoing engagement with this regime, and your past experience shows that sometimes the challenged harm exists. And so it's reasonable to infer it's going to happen again. And really the key here is that, unlike with Medicaid applications, you're saying we just shouldn't countenance an assumption that he's going to violate these rules unless he specifically says so. I think that's right, but I also, I'm not suggesting that's the only way an inmate could challenge a BOP policy. If an inmate can articulate a way that on a day-to-day basis, a BOP rule or regulation is altering his conduct, that may well suffice for an ongoing injury. If Mr. Jordan had declined to pay his fine and simply suffered an ongoing encumbrance of his account, I think that would count as an ongoing injury. Unlike a scenario like the Peacock, where I think we were talking about I have, I'm experiencing ongoing denials of my prescription refills. I think that plaintiff introduced statistics showing the likelihood that any individual refill prescription would be denied. We had a lot more of the type of details on which the court could base its prediction that an injury would indeed be substantially prominent, imminent, certainly impending, there's a substantial risk of it, whichever rubric the court picks, that had more on which to base that prediction. Well, Peacock went way beyond the plaintiff. I mean, you talked about all the Medicaid or a lot of the Medicaid patients in DC. Isn't that right? I'm not sure, Your Honor. It certainly started at standing analysis by looking at the specific pleadings. And again, there were statistics about the likelihood of any one individual application getting the type of denial they alleged was unlawful. I don't want to overplay our standing hand here. Again, we do acknowledge that Mr. Jordan is entitled to some liberal construction. It's just, it has to be a construction of pleadings he's actually made. And we don't have any of the pleadings of either ongoing injury that these, unlike the case in Raymond V Saxby, where the alleged unlawful action there, the failure to publish fulls, the court said it injury because inmates were unable day-to-day to conform their conduct to the rules that they didn't know the contents of. If Mr. Jordan were challenging any of the substantive rules that say you have to, I don't know if it actually says you have to make your bed, but any of the rules against untidiness or insolence or violence, if he were saying any of those were beyond the BOP statutory authority, I think it'd be pretty easy to find standing on the basis of what he's said so far. But he's not. He's only challenging the follow-on. If I break one of those unchallenged rules, will I be disciplined with the type of sanction that I say is unlawful and not one of the sanctions I think is lawful? Let me ask you about, according to the record, what is the last time he was sanctioned? I believe it's 2019. Right. And he's filed three briefs. Has he made any sanctions since 2019? I do not believe so. I think he cites some of his litigation in other circuits from 2023 that refers to sort of a long disciplinary history, but nothing in either his filing, and I don't know if that separate court case refers to any misconduct. As far as I know, based on the record before us, the last imposition of discipline was in 2019. Counsel, don't we assess standing on a motion to dismiss based on the time the suit was initiated and based on what's in the complaint? I believe so, Your Honor. I think there's been a suggestion that the court should remand to sort of permit Mr. Jordan a chance to amplify his filings. You know, we're not disputing that that's within the court's power, but we think given the long history of this litigation, the fact that Mr. Jordan has been filing briefs, and as far as we can tell, there are none of... He doesn't say, if only I had known, I would have alleged X ongoing injury or I would have done more to shore up my risk of future harm than anything he's said so far. We think the more appropriate disposition would simply be to dismiss for lack of standing. If Mr. Jordan has since formed those intent or has suffered more recent disciplinary violations that he thinks gives him a basis to seek this type of relief, we think the more on that basis. Dr. Rogers, do you have any questions? No, thank you. Okay, thank you. We ask this court to remand with instructions to dismiss for lack of jurisdiction or in the alternative, if it concludes Mr. Jordan has standing, to simply affirm. Thank you. Ms. Foley, you have three minutes. Thank you. So I'd like to address standing and the non-delegation doctrine, which my friend mentioned, which I didn't really cover in my opening. So on standing, this is a pro se complaint and the sheer number of past violations certainly does distinguish Mr. Jordan from every other inmate. Presumably he was trying not to infer sanctions back then because the sanctions he could have incurred, as I mentioned before, could deprive him of the few privileges that federal inmates have or even land him in solitary confinement. I think Judge Garcia made an excellent point that standing is assessed on the basis of the time of filing. And I think it's important to note too that this court in NBXRL Peacock noted that none of the plaintiffs there expressly alleged standing. Those plaintiffs were counseled, but the court read their allegations in their favor and drew reasonable inferences therefrom. And then in terms of statistics, I think Mr. Jordan has presented a compelling case for standing on the basis of an imminent injury on the basis of his past offenses. With respect to the merits, I think that reading the statute in the way that BOP asks would violate the non-delegation doctrine. And I would put this court to Gundy. In Gundy, a majority of the Supreme Court, that is the four-justice plurality and the three-justice dissent, agreed that if the statute there at issue gave the Attorney General, who undisputedly has oversight over the criminal law, if it gave him the power to write his own criminal code specifying whether sex offender registration requirements would apply to a class of offenders, then the non-delegation doctrine would be implicated. The plurality therefore read the statute narrowly to grant the Attorney General the power only to specify when those registration requirements would apply. Here, BOP claims the power not just to write its own quasi-criminal code, but also to craft the vast majority of the punishments for violation of that code. That's a breathtaking assertion of authority, and BOP purports to locate it entirely in the discipline paired with its authority to manage and regulate the federal prisons. That's simply not enough congressional guidance for the exercise of such awesome power, and this court and the Supreme Court have both noted that the more congressional power is granted, the more precise must be the directions for its use. If the court has no more questions in my few remaining seconds, I'd just like to note that a plaintiff's burden to establish standing at the and Mr. Jordan's pleading is more than adequate. The court should therefore hold that he does have standing. If the court were to find that Mr. Jordan lacks standing, then certainly this case should be remanded so that Mr. Jordan can replead. On the merits, the court should follow American bus and reverse and remand for further proceedings. All right, Ms. Foley, you were appointed by the
judges: Henderson, Garcia, Rogers